United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN S. WHITE, on behalf of himself and those similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>E-LOAN, INC.,<br><br>    Defendant.                           / | No. C 05-02080 SI<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

On March 10, 2006, the Court heard argument on plaintiff's motion for class certification. Having considered the arguments presented and the papers submitted,[1] and for good cause appearing, the Court hereby GRANTS plaintiff's motion.

**BACKGROUND**

In early 2005, plaintiff John S. White received a standardized written solicitation ("S501-A mailing") from defendant, E-Loan, Inc. Compl. at ¶ 32, Exh. A. The solicitation states that White has been "pre-qualified" to refinance or consolidate his debt, and encourages him to contact E-Loan to see "how much money you could be saving every month." Compl., Exh. A. On the reverse side, in small print, the solicitation states that White has pre-qualified for a first mortgage refinance loan of "up to $25,000," but adds that "the availability and amount of your loan depends on the value of your property, your income and other conditions." Compl., Exh. B.

---

[1] White has submitted a number of supplemental materials since the hearing took place. The Court has considered these items as well.

On May 20, 2005, White filed this suit, a purported class action, claiming that E-Loan's solicitation violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681-1681x, and seeking statutory and punitive damages, as well as declaratory and injunctive relief. White's complaint alleges that E-Loan's solicitation did not constitute a "firm offer of credit" as required by 15 U.S.C. § 1681b. He seeks statutory damages of $100 to $1000 for each member of the class. *See* 15 U.S.C. § 1681n (imposing statutory damages of $100 to $1000 for willful violations of the FCRA).

Based on E-Loan's discovery responses, White now moves to certify a 100,000 member class, consisting of all consumers who received the S501-A mailing.[2] For the following reasons, the Court GRANTS White's motion.

## LEGAL STANDARD

The decision as to whether to certify a class is committed to the discretion of the district court within the guidelines of Federal Rule of Civil Procedure 23. *See Cummings v. Connell*, 316 F.3d 886, 895 (9th Cir. 2003). A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and that at least one of the requirements of Federal Rule of Civil Procedure 23(b) have been met. *See* Fed. R. Civ. P. 23; *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). A class may be certified only "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364 (1982).

Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests

---

[2]White originally proposed the following definition for the class: "All consumers throughout the United States for whom consumer report information was obtained or used by E-Loan in connection with a solicitation letter for a transaction not initiated by the consumer and who did not receive a firm offer of credit." Pl. Mot. at 4. This class definition apparently would result in a class of 2.6 million members, the vast majority of whom received different mailings from White. *See* Lin Decl., ¶ 5. In his reply brief, White narrowed his proposed class to those consumers who received the S501-A mailing. According to E-Loan, 100,000 people received that solicitation.

of the class. *See* Fed. R. Civ. P. 23(a). A plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b), including (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. *See* Fed. R. Civ. P. 23(b).

## DISCUSSION

For the reasons discussed below, the Court finds that White has satisfied the requirements of Rule 23(a) and Rule 23(b) and therefore GRANTS White's motion for class certification.

**I.     Rule 23(a)**

As mentioned above, "Rule 23(a) establishes four prerequisites for class action litigation, which are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2004). Plaintiff has demonstrated that each is present here.

**A.     Numerosity**

The parties agree that plaintiff's proposed class consists of 100,000 members. The Court finds that this number of plaintiffs easily satisfies the numerosity requirement. *See, e.g.*, *Immigrant Assistance Project of the Los Angeles County Fed. of Labor v. Immigration and Naturalization Service*, 306 F.3d 842, 869 (9th Cir. 2002) (finding that district court did not abuse discretion in certifying class of approximately 11,000 and stating that "[c]ourts have certified classes with far fewer members").

**B.     Commonality**

E-Loan's challenge to White's ability to meet the commonality prong of Rule 23(a) was based on the fact that White received a different solicitation than 2.5 million members of his original proposed class. *See* Def. Oppo. Br. at 20-22. Now that White has limited the class he proposes to represent to the 100,000 individuals who received the same solicitation he received, E-Loan's objection is no longer applicable. Accordingly, the Court finds that White has met the commonality prong of Rule 23(a).

3

**C.    Typicality**

As with the commonality prong of Rule 23(a), E-Loan's challenge to the typicality prong was based on the fact that White's original proposed class consisted primarily of people who received different solicitations than he did. As White has limited his class, the Court finds that he meets the typicality prong of Rule 23(a).

**D.    Adequacy of Representation**

E-Loan also challenges White's ability to adequately represent his proposed class. They raise three arguments concerning White's ability to finance the suit, a potential conflict with other class members over the types of damages White seeks, and White's criminal history.

**1.    Ability to Finance Suit**

E-Loan's first challenge to White's ability to adequately represent the class is that he lacks the financial means to finance this suit, and specifically that he lacks the means to pay for notice to the class. The impact of this argument is substantially diminished given that White has reduced his proposed class from 2.6 million to 100,000; by E-Loan's calculations, this reduces the cost of notice from $1.3 million to $50,000, a much more manageable amount. In any event, in his reply brief White's counsel has indicated that it will advance the cost of the notice if the Court decides that plaintiff should bear that expense.

**2.    Conflict with Other Class Members**

E-Loan claims that White's interests conflict with those of other class members because he is willing to forego actual damages to seek only statutory damages. E-Loan argues that a class action would be inappropriate because it would be *res judicata* to a plaintiff who might have suffered actual damages in excess of the statutory maximum of $1,000.

The Ninth Circuit has instructed courts to consider the *res judicata* effects of class certification. *See, e.g.*, *Besinga v. United States*, 923 F.2d 133, 135 (9th Cir. 1991). While it is certainly a possibility that a consumer will be inadvertently barred from asserting a claim for actual damages, similar concerns are raised by every proposed class certification. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th

4

1 Cir. 2006) ("Refusing to certify a class because the plaintiff decides not to make the sort of
2 person-specific arguments that render class treatment infeasible would throw away the benefits of
3 consolidated treatment."). Here, E-Loan has offered nothing more than the dubious assertion that some
4 class member, somewhere, will be prejudiced by class certification. Without a more concrete showing,
5 the Court does not believe that E-Loan's speculation is sufficient to find that White's interests conflict
6 with the class.

### 3. White's Criminal History

9 E-Loan's final basis for challenging White's ability to adequately represent the proposed class
10 stems from White's four theft convictions. In approximately 1960, when White was 16, he stole a car
11 and was convicted of both car theft and robbery. Chng Decl., Exh. A at 17-18. Sometime later – the
12 precise date is unclear but it appears to have been before 1971 – he was again convicted of car theft and
13 spent three years in the Florida state penitentiary. *Id.* at 18-19. In 1971, White was convicted of selling
14 goods in the course of interstate shipment, apparently for selling boxed meat from a truck that he had
15 been hired to drive as a trucker. *Id.* at 19. White spent three years in federal prison for that offense.
16 Finally, White was convicted in 1978 of stealing a tractor, trailer, and its contents, for which he was
17 sentenced to three years in Texas prison. *Id.* at 19-20. E-Loan argues that these convictions
18 demonstrate that White will not be able to serve as a fiduciary for the interests of the class.

19 When considering the adequacy of a class representative, courts generally consider only two
20 questions "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other
21 class members, and (2) will the representative plaintiffs and their counsel prosecute the action
22 vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Some
23 courts have also examined the "personal integrity of class representatives," *In re Computer Memories*
24 *Sec. Litig.*, 111 F.R.D. 675, 682 (N.D. Cal. 1986), and some have found that a class representative would
25 be inadequate based on such concerns, *see, e.g.*, *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d
26 Cir. 1998) (holding that district court did not abuse its discretion in denying certification on grounds that
27 proposed representative would be inadequate because of "serious concerns as to his credibility at trial").
28 In light of the relatively limited scope of this class action lawsuit and White's experienced class

5

counsel, the Court does not believe that White's convictions will prevent him from adequately representing the class. The last of White's convictions occurred almost 30 years ago. It is a stretch to say that they remain strongly probative of a lack of personal integrity. The sole case plaintiff relies on where criminal conduct prevented a plaintiff from serving as class representative involved conduct that was much more recent, and that was much more related to his role as class representatives. *See, e.g.*, *In re Proxima Sec. Litig.*, 1994 WL 374306 (S.D. Cal. 1994) (finding that plaintiff's admission of fraudulent conduct that occurred less than a year before case was filed precluded him from being class representative because as class representative "he would be charged with upholding the same standards of conduct that he [previously] failed to meet").

Accordingly, the Court finds that White satisfies the adequacy requirement of Rule 23(a).

## II.    Rule 23(b)

As discussed above, to certify a class a court must find that at least one of Rule 23(b)'s conditions are satisfied. Here, White argues only that he satisfies Rule 23(b)(3), which provides:

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). E-Loan argues that "common questions of law and fact" do not predominate in this case, and that a class action is not a superior method of adjudicating the controversy.

### A.    Predominance

Under Rule 23(b)(3), White must show that common questions of law and fact "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). E-Loan argues that White cannot satisfy this requirement because the determination whether a credit offer constitutes a "firm offer of credit" depends upon the individualized circumstances of the recipient of the offer. The Court disagrees.

6

The FCRA limits the circumstances under which a company may obtain a consumer's credit report. When it lacks the consumer's permission, a company may obtain a credit report from a consumer reporting agency only where it intends to make a "firm offer of credit" to the consumer. 15 U.S.C. § 1681b(c)(1). The FCRA defines a "firm offer of credit" as "any offer of credit . . . to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a.

The information the credit report obtained by the company may contain in these circumstances is limited, and may only include: "(A) the name and address of a consumer; (B) an identifier that is not unique to the consumer and that is used by the [company] solely for the purpose of verifying the identity of the consumer; and (C) other information pertaining to a consumer that does not identify the relationship or experience of the consumer with respect to a particular creditor or other entity." 15 U.S.C. § 1681b(c)(2). Because a company must make the offer only upon this limited information, the FCRA allows a company to condition a firm offer of credit on three additional criteria:

> (1) The consumer being determined, based on information in the consumer's application for the credit or insurance, to meet specific criteria bearing on credit worthiness or insurability, as applicable, that are established--
>
>     (A) before selection of the consumer for the offer; and
>
>     (B) for the purpose of determining whether to extend credit or insurance pursuant to the offer.
>
> (2) Verification
>
>     (A) that the consumer continues to meet the specific criteria used to select the consumer for the offer, by using information in a consumer report on the consumer, information in the consumer's application for the credit or insurance, or other information bearing on the credit worthiness or insurability of the consumer; or
>
>     (B) of the information in the consumer's application for the credit or insurance, to determine that the consumer meets the specific criteria bearing on credit worthiness or insurability.
>
> (3) The consumer furnishing any collateral that is a requirement for the extension of the credit or insurance that was--
>
>     (A) established before selection of the consumer for the offer of credit or insurance; and

(B) disclosed to the consumer in the offer of credit or insurance.

15 U.S.C. § 1681a(l). "Thus, a creditor must honor a firm offer of credit only if, based on information in the consumer report, the application, or other information bearing on credit worthiness, the consumer meets the criteria initially used to select that consumer for the offer." *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 841 (5th Cir. 2004).

The above requirements allow companies to engage in a process known as "prescreening." In prescreening,

> credit reporting agencies compile lists of customers who meet specific criteria provided by the creditor, and then provide the lists to a creditor, who uses the lists to solicit customers with firm offers for credit in the form of pre-approved offers of credit. To access more detailed information to determine whether the consumer meets a creditor's specific criteria bearing on credit worthiness, a creditor must obtain a consumer's authorization. Thus, acceptance of a pre-approved offer of credit typically requires the consumer's agreement to permit the creditor to access the consumer's credit information. If a consumer responds to a pre-approved offer of credit, and authorizes the creditor to access the consumer's credit report, the creditor may then access the consumer's credit report to determine whether the consumer satisfies its previously-established [criteria] for credit worthiness.

*Id.* (footnotes omitted); *see also* 16 C.F.R., pt. 600, app. (Federal Trade Commission's commentary, discussing § 604(3)(A) of the FCRA).

Because the FCRA allows a company to "make a 'conditional' firm offer of credit; that is, an offer that is conditioned on the consumer meeting the creditor's previously-established criteria for extending credit," *Kennedy*, 369 F.3d at 841, E-Loan argues that "each class member would have to show that they met the preestablished criteria but E-Loan refused to honor the offer." Def. Oppo. Br. at 15.[3] The Court does not believe that E-Loan is correct.

In *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006), the Seventh Circuit rejected a similar argument. Relying on an earlier case in which the court had found that an offer of credit was

---

[3]In connection with this argument, E-Loan badly misconstrues a passage from the Federal Reserve Board's Report to the Congress on Further Restrictions on Unsolicited Written Offers of Credit and Insurance. *See* Chng Decl., Exh. B. E-Loan quotes the report as saying that "many credit products cannot contain 'complete pricing information tailored to a consumer,'" and that "'[i]t is difficult to set the price of [such products] solely based on information in [consumer reporting] files'; those files lack information 'about the [consumer's] property,' and there must be 'some sort of further contact with the recipient of a prescreened solicitation before the underlying . . . price can be specified completely.'" Def. Oppo. Br. at 16-17. The section of the report E-Loan cites, however, explicitly discusses offers of insurance, not offers of credit. *See* Chng Decl., Exh. B at 30. E-Loan removed the word "insurance," replacing it with "such products."

8

a "sham" used to identify potential auto buyers, the court held that courts should focus on whether an offer has any value to the consumer in determining whether it qualifies as a "firm offer of credit." *Id.* at 955. Otherwise, the Court reasoned, companies could use credit reports obtained under the FCRA to offer $1 in credit, the precise situation that occurred in the earlier case. *Id.* at 955 ("A business that obtains consumer credit information and then offers a $1 loan (at 100% daily interest) toward the purchase of a car has not made a 'firm offer of credit' but has instead used credit histories to identify potential auto buyers."). As the Seventh Circuit explained:

> [A] court must determine whether the offer has value as an extension of credit alone. A definition of "firm offer of credit" that does not incorporate the concept of value to the consumer upsets the balance Congress carefully struck between a consumer's interest in privacy and the benefit of a firm offer of credit for all those chosen through the pre-screening process. From the consumer's perspective, an offer of credit without value is the equivalent of an advertisement or solicitation.

*Id.* (internal quotation marks omitted). Thus, the court held that to determine whether an offer of credit qualifies as a firm offer of credit "a court need only determine whether the four corners of the offer satisfy the statutory definition . . . and whether the terms are honored when consumers accept." *Id.* at 956.[4]

The Court agrees with the reasoning of the Seventh Circuit. Allowing a "firm offer of credit" that has no value to the consumer – either because its terms are too vague or because it is for a trivial amount – would thwart the balance that Congress intended. Thus, the Court rejects E-Loan's argument that whether an offer of credit is a "firm offer" is an individualized inquiry. White may establish that the four corners of the E-Loan offer were too vague to constitute a firm offer of credit. As this is the thrust of White's complaint, the Court finds that common issues of fact and law predominate. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir.1998) ("When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.").

---

[4]Defendant also cites an *amicus* brief submitted in a prior case by the Federal Trade Commission, but that brief supports the Seventh Circuit's holding.

9

**B.     Superiority**

The primary dispute between the parties is over whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b). E-Loan advances a number of arguments as to why a class action is not superior.

### 1.     "Annihilating Damages" and Due Process Concerns

E-Loan's first two arguments are related. It argues that it faces enormous liability based upon the statutory damages available to the class plaintiffs. While this concern is somewhat diminished given the reduction in size of plaintiff's proposed class to 100,000 members,[5] E-Loan still faces a statutory damages award ranging from $10 million to $100 million. As E-Loan's net worth is only approximately $90 million, the prospect of annihilating damages remains.

A number of courts have declined to certify class actions where the plaintiffs have sought enormous statutory damage awards on behalf of the class. These courts have generally reasoned that class actions involving statutory damages can result in liability that is completely unrelated to the amount of harm inflicted. The first of these cases involved the Truth in Lending Act ("TILA"). *See, e.g.*, *Ratner v. Chemical Bank New York Trust Co.*, 54 F.R.D. 412 (S.D.N.Y. 1972) (declining to certify class of 130,000 that sought $13 million in statutory damages); *Shields v. First Nat'l Bank of Ariz.*, 56 F.R.D. 442 (D. Ariz. 1972) (declining to certify class of 72,000 that sought $100 million in statutory damages); *Alsup v. Montgomery Ward & Co.*, 57 F.R.D. 89 (N.D. Cal. 1972); *Gerlach v. Allstate Insurance Co.*, 338 F.Supp. 642 (S.D. Fla. 1972); *Wilcox v. Commerce Bank*, 474 F.2d 336 (10th Cir. 1973) (finding trial court did not abuse discretion is declining to certify class). Other courts have relied on the same logic in denying class certification where the damages would be "ad absurdum."[6] A few

---

[5] The original proposed class of 2.6 million members would have resulted in an award of between $260 million and $2.6 billion in statutory damages.

[6] *See, e.g.*, *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003) ("[E]conomic harm . . . may be required for superiority under the Federal Rules of Civil Procedure . . . when, as in the present suit, the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff."); *Forman v. Data Transfer*, 164 F.R.D. 400 (E.D. Pa. 1995) ("A class action would be inconsistent with the specific and personal remedy provided by Congress to address the minor nuisance of unsolicited facsimile advertisements."); *Wilson v. Am.*

10

1  of these cases have involved the FCRA.[7]

2  The Ninth Circuit has never explicitly addressed the issue of statutory damages in class action
3  lawsuits, but it has cited favorably to the TILA cases. In *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226
4  (9th Cir. 1974), the Ninth Circuit considered an action brought against real estate brokers in Los
5  Angeles County, who the plaintiffs alleged had conspired to fix brokerage commissions in violation of
6  the Sherman Act. *Id.* at 228. Based on the 400,000 sales that had occurred in Los Angeles County
7  during the relevant time period, plaintiffs estimated that the class had been collectively injured in the
8  amount of $250 million. They therefore sought $750 million in damages under the treble damages
9  provision of the Sherman Act. *Id.* The Ninth Circuit reversed the district court and held that the action
10 could not be maintained as a class action. *Id.* The Ninth Circuit gave three reasons for its holding, one
11 of which was concern over the amount of damages that might be imposed – jointly and severally – upon
12 the individual defendants, no matter how insignificant a defendant was. *Id.* at 235. Relying on the
13 TILA cases identified above, the court held that a class action was not a superior method of adjudicating
14 the controversy at hand. *Id.* at 235 ("At some point the logic of the law leads in this situation to an ad
15 absurdum result.").

16 Despite the above cases, the Court believes that White's proposed class action satisfies the
17 superiority test. While the damages E-Loan faces are substantial, they can be reduced if E-Loan is
18 found liable. *See Murray*, 434 F.3d at 954 ("An award that would be unconstitutionally excessive may
19 be reduced . . . but constitutional limits are best applied after a class has been certified."); *Parker v. Time*
20 *Warner Entertainment Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003) ("[I]t may be that in a sufficiently
21 serious case the due process clause might be invoked, not to prevent certification, but to nullify that
22 effect and reduce the aggregate damage award. . . . At this point in this case, however, these concerns

---

*Cablevision*, 133 F.R.D. 573, 578 (W.D. Mo. 1990).

[7]*See* Chng Decl., Exh. C (*Legge v. Nextel Comm., Inc.*, Case No. CV 02-8676 DSF (C.D. Cal. June 28, 2004)); *Anderson v. Capital One Bank*, 224 F.R.D. 444, 453 (W.D. Wis. 2004) ("The potential damages for such a class are wholly out of proportion to the harm done to any of the class members . . . ."); *In re Trans Union Corp.*, 211 F.R.D. 328, 347-51 (N.D. Ill. 2002) (declining to certify FCRA class where no actual damage had occurred and class was approximately 190 million members); *but see Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295 (N.D. Ill. 2005) (certifying class of approximately 733,400 members under FCRA).

11

remain hypothetical."). Indeed, in this case the Due Process Clause might require that they be reduced. *See State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) ("The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor."). But the Court believes that issue is best addressed when E-Loan's actions have been concretely defined, and not in the abstract.[8]

It is also worth noting that E-Loan is not accused of a mere "technical" violation of the FCRA. *See Ratner*, 54 F.R.D. at 416 ("[T]he proposed recovery of $100 each for some 130,000 class members would be a horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant, for what is at most a technical and debatable violation of the Truth in Lending Act."). Unlike statutory damage awards under TILA, statutory damages are available under the FCRA only for willful violations of the statute. *See* 15 U.S.C. § 1681n(a) (imposing liability on "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter").

Most important, however, is the fact that Congress has not acted to limit class action damages under the FCRA. Certainly Congress could have done so; following a spate of TILA class action lawsuits it amended that statute to cap the amount that could be recovered in class actions. *See* 15 U.S.C. § 1640(a)(2)(B) (limiting total amount of recovery to "the lesser of $500,000 or 1 per centum of the net worth of the creditor"). Congress has similarly capped class action awards under other statutes. *See* 15 U.S.C. § 1692k(a)(2)(B) (same limit under Fair Debt Collection Practices Act). But Congress amended the FCRA as recently as 2003, yet has not enacted a similar cap. *See* Fair and Accurate Credit Transaction Act ("FACTA"), Pub. L. No. 108-159, 117 Stat. 1952 (Dec. 4, 2003). Thus, to the extent any problem exists, it results from Congress's policy decisions and is therefore Congress's issue to address. *See Murray*, 434 F.3d at 953 ("The reason that damages can be substantial, however, does not lie in an 'abuse' of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person . . . combined with GMACM's decision to obtain the credit scores of more than a million persons.").

---

[8] It is also worth noting that under the logic of E-Loan's argument, the greater the number of violations of the FCRA,ticket less likely a company can be held fully accountable. The Court does not believe that E-Loan's decision to solicit on a large scale should shield E-Loan from the consequences of its solicitations.

12

Based on the above, the Court rejects E-Loan's argument that the size of the potential damage award prevents a class action from being a superior method of adjudicating this case.

### 2. Alternative Methods of Enforcement

E-Loan's next argument is that the remedy that Congress has provided – individual statutory damages accompanied by a provision for attorney's fees – is a superior mechanism for resolving disputes under the FCRA. The Court disagrees. As courts have repeatedly recognized, the statutory damages available under the FCRA are "too slight to support individual suits." *Murray*, 434 F.3d at 953; *see also Braxton v. Farmer's Ins. Gp.*, 209 F.R.D. 654, 662 (N.D. Ala. 2002) ("[T]he cost of investigating and trying these cases individually likely exceeds the value of any statutory and/or punitive damage award that may be due to any particular class claimant."). Thus, without class actions, there is unlikely to be any meaningful enforcement of the FCRA by consumers whose rights have been violated. Moreover, given that thousands of consumers may have suffered identical injury, a class action is certainly the most efficient way to adjudicate disputes over those consumers' rights.

E-Loan also argues that the FTC's administrative enforcement capabilities are superior to a class action. *See* 15 U.S.C. § 1681s (authorizing FTC to enforce compliance with the act). While the FTC can bring a civil action against a company, however, such an action does not provide the consumer whose rights were violated with any redress. Further, as evidenced by the FCRA's authorization of statutory damages and attorneys' fees awards, FTC enforcement is not designed to be the sole mechanism for protecting consumers' rights created by the FCRA.

### 3. Manageability Concerns

E-Loan's final argument against class certification is that the proposed class raises serious manageability concerns. As above, the reduction of plaintiff's proposed class size dramatically lessens the impact of this argument. More importantly, aside from repeating arguments concerning the cost of notifying potential plaintiffs and the need for individualized legal and factual determinations for each plaintiff – arguments rejected above – E-Loan's manageability argument adds nothing new. The Court agrees with White that the proposed class size does not present any significant manageability issues.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiff's motion for class certification, and certifies the following class:

> All individuals throughout the United States whose consumer reports were obtained or used by E-Loan in connection with a credit transaction not initiated by them, and who received from E-Loan the S501-A mailing.

**Counsel are ordered to meet and confer and submit a jointly proposed form and manner of notice to the Court no later than August 31, 2006.**

**IT IS SO ORDERED.**  (Docket No. 49).

Dated: August 18, 2006

SUSAN ILLSTON
United States District Judge